UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
*Plaintiff,*

**v.**

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES**

*Defendant.*

Case No. 1:26-cv-7258

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEF**

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 *et seq.*, seeking to compel Defendant U.S. Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS"), to produce records related to their quiet shutdown of the process for refugees to seek review of denials of their applications for refugee resettlement to the United States through the Request for Review ("RFR") policy. The information sought is of crucial importance because USCIS's changed policy deprives refugees of any avenue to challenge a denial of their application for resettlement and is the latest attempt by the government to decimate the U.S. Refugee Admissions Program ("USRAP").

2. The International Refugee Assistance Project's ("IRAP") FOIA Request ("FOIA Request") is for a discrete and tiny universe of documents relating to the recission of USCIS's

previous RFR policy as established by the May 3, 2005 Memo: Guidance for Adjudicating Requests for Review of Denied I-590 Refugee applications ("Cuddihy Memo")[1] and later expanded upon by USCIS's September 29, 2017 Standard Operating Procedure: Form I-590, *Registration for Classification as a Refugee Request for Review (RFR)* ("2017 SOP").[2] IRAP further requests data relating to the total number of RFRs currently pending with USCIS and the number of RFRs processed by month since January 20, 2025.

3. USCIS's new policy ends refugee applicants' ability to seek review of denials of their applications for resettlement and has significant implications for refugees abroad as well as their families and communities in the United States. The policy prevents family reunification, disrupts individuals' ability to seek safety, and upends more than two decades of established USCIS policy. Given that it is critical to understand the basis for this policy, the manner in which it is being implemented, and its effect on hundreds of thousands of refugees worldwide, IRAP seeks an injunction compelling USCIS to expeditiously process its FOIA Request and promptly produce the requested documents.

4. In recognizing the significant impact of USCIS's new RFR policy, IRAP submitted the underlying FOIA Request on June 11, 2026, which sought expedited processing and fee waivers. Ex. 1, USCIS FOIA Request. IRAP's FOIA Request demonstrated that IRAP satisfied two independent "compelling need" grounds for expedited processing pursuant to 5 U.S.C. §552(a)(6)(E) and 6 C.F.R. §5.5(e). *Id.* IRAP's FOIA Request further demonstrated that IRAP satisfied the "public interest" requirement for a waiver of fees pursuant to 6 C.F.R.

---

[1] Joseph D. Cuddihy, Guidance for Adjudicating Requests for Review of Denied I-590 Refugee Applications, USCIS, May 3, 2005.
[2] USCIS, Standard Operating Procedure: Form I-590, *Registration for Classification as a Refugee Request for Review (RFR)* (September 29, 2017).

§5.11(k). *Id.* Despite this showing, USCIS has yet to respond to or even acknowledge receipt of IRAP's FOIA Request.

5. There is robust public interest, discussion, and debate about the current status of the U.S. Refugee Admissions Program ("USRAP"). With every day that passes, thousands of directly and indirectly impacted people go without critical information needed to make both time-sensitive and life-altering decisions about their immigration cases. Moreover, immigration attorneys are unable to counsel their impacted clients on any number of nuanced and complex immigration issues.

6. For these reasons, IRAP files the instant action and respectfully requests the Court to order USCIS to expeditiously process IRAP's FOIA Request and promptly disclose the requested documents.

## JURISDICTION AND VENUE

7. This court has subject-matter jurisdiction over IRAP's claims under 5 U.S.C. §552 *et seq.* (FOIA statute) and 28 U.S.C. §1331 (federal question). This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§2201-2202 (Declaratory Judgement Act).

8. This Court has jurisdiction pursuant to 5 U.S.C. §552(a)(6)(E)(iii) to review an agency's denial of an expedited processing request. *See also* 6 C.F.R. §5.8(e).

9. Venue is proper in this District under 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. §1391(e) because this is a civil action in which Defendant USCIS is a federal agency, there is no real property involved in this action, and Plaintiff IRAP has its principal place of business in this District.

## PARTIES

10. Plaintiff IRAP is a 501(c)(3) non-profit organization incorporated under the laws of New York, and headquartered at One Battery Park Plaza, 33rd Floor in New York, New York. IRAP utilizes media, systemic policy advocacy, direct legal aid, and impact litigation to serve the world's most persecuted individuals and empower the next generation of human rights leaders.

11. Disseminating information is an integral component of IRAP's mission. IRAP routinely engages in information-gathering from its legal and policy work, including through FOIA, analyzing the information, and distributing it. IRAP has published a number of policy reports for the public on refugee resettlement issues and maintains "Know Your Rights" and other educational materials on its website. It routinely releases press releases and publishes a blog on its work and on issues relating to refugee policy. It has a monthly newsletter that reaches over 25,000 individuals. It maintains a Facebook account with over 47,000 followers and a Twitter account with over 18,000 followers. IRAP also routinely collects and distributes resources and up-to-date information to its network of 30 law school chapters and over 80 law firms with which it works and provides regular practice advisories to legal practitioners on developing issues for refugees and other displaced people.

12. Defendant USCIS is a component agency of DHS and is an agency of the United State Government under 5 U.S.C. §552(f)(1) and 5 U.S.C. §551(1). USCIS has possession, custody and control over the documents(s) IRAP seeks, and is the federal agency primarily responsible for adjudicating petitions and applications for various immigration benefits including for refugees, follow-to-join refugee and asylee petitioners, and humanitarian parole applicants.

## FACTUAL ALLEGATIONS

**The U.S. Refugee Admissions Program**

13. The Refugee Act of 1980 created the USRAP to "provide a permanent and systematic procedure for the admission…of refugees of special humanitarian concern to the United States, and to provide…for the effective resettlement and absorption of those refugees who are admitted." Pub. L. No. 96-212, 94 Stat. 102 (1980).

14. To be eligible for refugee resettlement in the United States, refugees must face displacement from their country of nationality because of persecution or a well-founded fear of persecution on specified grounds, not be firmly resettled in a foreign country, and be "of special humanitarian concern" to the United States. 8 U.S.C. §1157(c)(1); *id.* §1101(42) (definition of a refugee).

15. All refugees undergo what is typically a years-long application process, first with the U.N. High Commissioner for Refugees ("UNHCR") or another referral source. If referred to the USRAP, they then attend a series of interviews with a Refugee Support Center ("RSC") and ultimately USCIS.[3]

16. The RSC conducts a preliminary interview with the refugee applicant and completes the applicant's I-590 Application for Refugee Resettlement.[4] The RSC then forwards the I-590 to USCIS who conducts a detailed interview with the applicant. During this interview, the applicant must answer questions about their refugee claim and admissibility under U.S. law. 8 U.S.C. §1157(c); 8 C.F.R. §§207.1-2. Refugees and their qualifying family members ("derivative refugees") must also undergo rigorous background, security and medical checks. 8 C.F.R. §207.2.

---

[3] USCIS, *The United States Refugee Admissions Program (USRAP) Consultation and Worldwide Processing Priorities* (last accessed Aug. 25, 2026), https://www.uscis.gov/humanitarian/refugees-and-asylum/usrap.
[4] *Id.*

17. Refugees who are approved for resettlement and travel to the United States are inspected for admission by DHS at a port of entry. If admitted, the refugee obtains refugee status and is automatically authorized to work incident to their status. 8 C.F.R. §274a.12(a)(3).

18. Refugees who are not approved for resettlement receive a Notice of Ineligibility for Resettlement ("NOI") detailing the basis for their denial.

19. As of June 10, 2025, there were 582,482 refugees in the USRAP pipeline, of which 449,450 had not yet received a final decision.[5] Potentially thousands of individuals have RFRs pending, some for years.

20. On January 20, 2025, the President issued an executive order which suspended the entry of refugees into the United States through the USRAP beginning on January 27, 2025, and suspended refugee application decision-making. Realigning the United States Refugee Admissions Program, 90 Fed. Reg. 8549 (Jan. 20, 2025) (the "Refugee Ban"). The Refugee Ban allowed for the Secretaries of DHS and DOS to jointly admit refugees to the United States on "a case-by-case basis" where their entry … "is in the national interest and does not pose a threat to the security or welfare of the United States." *Id.* Following the ban's issuance, federal agencies suspended all refugee case processing and have failed to create any process for refugees to seek an exception to the ban.

21. The suspension of the USRAP became an issue of widespread public concern within the United States. Media outlets reported widely on the chaos and confusion caused by the

[5] U.S. Dep't of State, *Report to Congress on the United States Refugee Admission Program, Screening, Processing, and Referral Statistics* (June 2025) (last accessed Aug. 25, 2026), https://www.state.gov/wp-content/uploads/2025/09/2025-06-23-P-CRM-006768-USRAP-Screening-Processing-and-Referral-Statistics-Tab-1-Report-HRC120.pdf.

Refugee Ban, the resulting indefinite family separation, and disruption to the operations of refugee resettlement organizations.[6]

7. While the broader Refugee Ban remains in place, the government has established a refugee admissions process almost exclusively for white Afrikaners from South Africa. Thousands of Afrikaners have been resettled through this program while processing of refugees from other countries remains suspended.[7]

8. In October 2025, the Presidential Determination on Refugee Admissions for Fiscal Year 2026 was announced, setting a cap on refugee admissions at 7,500—the lowest determination ever set in the history of the refugee program. Presidential Determination on Refugee Admissions for Fiscal Year 2026, 90 Fed. Reg. 49005 (Oct 31, 2025). These 7,500 slots have been reserved primarily for Afrikaners from South Africa. *Id.* On May 27, 2026, the President issued an Emergency Presidential Determination increasing the Fiscal Year 2026 refugee admission cap by 10,000 to be allocated exclusively to white Afrikaners from South

---

[6] Shifra Dayak, *Refugee Admissions to the U.S. are Dropping Sharply in Trump's Second Term*, Pew Research Center (Aug. 17, 2026) (last accessed Aug. 25, 2026), https://www.pewresearch.org/short-reads/2026/08/17/refugee-admissions-to-the-us-are-dropping-sharply-in-trumps-second-term/; Margy O'Herron, *How the Trump Administration is Dismantling Refugee and Asylum Programs*, Brennan Center for Justice (July 22, 2026) (last accessed Aug. 25, 2026), https://www.brennancenter.org/our-work/analysis-opinion/how-trump-administration-dismantling-refugee-and-asylum-programs; Maria Ramirez Uribe, *3 Things to Know Aboud Trump's Order Raising the U.S. Refugee Cap Only for White South Africans*, PBS News (May 26, 2026) (last accessed Aug. 25, 2026), https://www.pbs.org/newshour/politics/3-things-to-know-about-trumps-order-raising-the-u-s-refugee-cap-only-for-white-south-africans; Hamed Aleaziz, *Groups Sue Over Trump's Pause on Refugee Admission*, The New York Times (Feb. 10, 2025) (last accessed Aug. 25, 2026), https://www.nytimes.com/2025/02/10/us/politics/refugee-lawsuit-trump.html; Jennifer Ludden, *Trump Freeze on Resettlement Funding Leaves New Refugees Scrambling to Adjust in the U.S.*, NPR (March 8, 2025) (last accessed Aug. 25, 2026), https://www.npr.org/2025/03/06/nx-s1-5309763/refugees-limbo-trump-freeze-resettlement-programs; Emmanuel Igunza, *A Life in Limbo for Somali Refugees Still Hoping to Make it to America*, NPR (April 18, 2025) (last accessed Aug. 25, 2026), https://www.npr.org/2025/04/18/nx-s1-5273584/a-life-in-limbo-for-somali-refugees-still-hoping-to-make-it-to-america; Hanna Beech, *'Broken My Hope': Trump's Move to Slash Refugee Arrivals Ricochet's Widely*, The New York Times (Nov. 6, 2025) (last accessed Aug. 25, 2026), https://www.nytimes.com/2025/11/06/world/asia/trump-refugee-cap-despair.html.

[7] Ximena Bustillo, *First Afrikaners Arrive in the U.S. Under Radically Redrawn Refugee Program*, NPR (May 12, 2025) (last accessed Aug. 25, 2026), https://www.npr.org/2025/05/12/g-s1-65984/south-african-afrikaner-refugee-us.

Africa. Emergency Presidential Determination on Refugee Admissions for Fiscal Year 2026, 90 Fed. Reg. 31645 (May 27, 2026).

**USCIS's Prior RFR Policy**

22. USCIS regulations do not provide for an opportunity to appeal a denial of refugee resettlement. But for over twenty years, USCIS policy provided refugees who received NOIs with the ability to submit a Request for Review ("RFR") of their denial to USCIS.

23. USCIS maintained guidance on the procedures and standards of review of RFRs, including a 2005 policy memo ("Cuddihy Memo")[8] and an updated Standard Operating Procedure ("SOP") published in 2017.[9]

24. Pursuant to the Cuddihy Memo and 2017 SOP, RFRs needed to allege significant legal error in USCIS's denial of refugee resettlement or present material new evidence.[10]

25. While USCIS's prior guidelines permitted applicants to submit only one RFR and to do so within 90 days of receiving an NOI, USCIS frequently exercised its discretion to review late submitted RFRs and/or multiple RFRs.[11]

26. The 2017 SOP in particular identified only six situations in which reviewing officers may reject an RFR, including when: 1) an applicant submits an RFR after the 90-day deadline **and** a cursory review shows no significant errors; 2) an applicant submits a second RFR after the first RFR was already adjudicated and denied **unless** the adjudicator "finds cause to reexamine the record"; 3) the RFR was not submitted by the principal applicant (in this case another RFR may be submitted; 4) The RFR was not signed by the principal applicant (in this case another RFR may be submitted); 5) the RFR or supporting documents are not translated into

---

[8] Cuddihiy, *supra* note 1.
[9] USCIS, *supra* note 2.
[10] Cuddihy, *supra* note 1; USCIS, *supra* note 2.
[11] *Id.*

English (in this case another RFR may be submitted); and 6) if a Lautenberg satellite case was administratively closed as "Not Qualified." Outside of these limited circumstances, USCIS policy required review of any submitted RFRs.[12]

**USCIS's Termination of the RFR Policy**

27. On or around April 26, 2026, USCIS published an alert on their webpage stating "[e]ffective April 23, 2026, USCIS no longer accepts or considers Requests for Review (RFRs) for Form I-590. USCIS will reject any RFRs pending as of April 23, 2026." Exhibit 2, Original USCIS Alert. This alert was later updated on or around May 20, 2026, to state "[e]ffective April 23, 2026, USCIS no longer accepts or considers Requests for Review (RFRs) for Form I-590."[13]

28. Apart from this one sentence alert, USCIS has not shared any information about their current RFR policy with affected individuals or the public, nor have they announced a recission of the Cuddihy Memo.

29. This apparent shift in USCIS's policy without further explanation created significant confusion and many unanswered questions including: 1) has the RFR policy been completely terminated? 2) What will happen to RFRs already pending before USCIS? And 3) What options for review of refugee resettlement denials are available to refugees who have I-590s pending?

30. IRAP has assisted hundreds of refugees with RFR submissions, many of whom have not received a response from USCIS despite having RFRs pending for years. IRAP urgently needs access to the requested documents and information to properly advise its clients and share vital information with impacted communities.

**Plaintiff's FOIA Request**

---

[12] USCIS, *supra* note 2.
[13] USCIS, *Request for Review Tip Sheet* (last accessed Aug. 19, 2021), https://www.uscis.gov/archive/request-for-review-tip-sheet.

31. IRAP filed a FOIA Request with USCIS on June 11, 2026 requesting: 1) all policy memoranda, directives, SOPs, and other records related to USCIS's new RFR policy effective April, 23, 2026; 2) documents related to the superseding or recission of the Cuddihy Memo and the 2017 SOP; and 3) data on the total number of RFRs currently pending and RFR adjudications by month since January 20, 2025. Ex. 1.

32. IRAP requested expedited processing pursuant to 5 U.S.C. §552(a)(6)(E) and 6 C.F.R. §5.5(e), based on two reasons. First, The FOIA Request involves "an urgency to inform the public about an actual or alleged federal government activity" by IRAP, an organization "primarily engaged in disseminating information." *See* 5 U.S.C. §552(a)(6)(E)(v)(II); 6 C.F.R. §5.5(e)(1)(ii); Ex. 1. Second, the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual. *See* 5 U.S.C. §552(a)(6)(E)(v)(I); 6 C.F.R. §5.5(e)(1)(i); Ex. 1. The FOIA Request included "a statement certified to be true and correct, explaining in detail the basis for making the request for expedited processing as required by 6 C.F.R. §5.5(e)(3); Ex. 1.

33. As stated in the FOIA Request, IRAP is a 501(c)(3) non-profit organization that utilizes media and systemic policy advocacy, direct legal aid, and impact litigation to serve refugees, asylum seekers, and other people seeking safety.[14] IRAP works with a global network of student advocates, pro bono partners, and volunteers to deliver legal solutions for displaced people. Disseminating information is an integral component of IRAP's mission to create a world where people seeking safety are empowered.[15] To engage in its mission-driven work, IRAP relies on FOIA requests, such as the requests underlying this lawsuit, to understand governmental

---

[14] *See Mission & Vision,* IRAP (last accessed Aug. 25, 2026), https://refugeerights.org/who-we-are/mission-vision.
[15] *See Id.*

policies affecting refugees, asylum seekers and other displaced people on the move. IRAP intends to use the data sought in the instant requests to educate the public about the new RFR policy , and to inform its advocacy and legal services.

34. For instance, since 2009, IRAP has filed over a hundred FOIA requests and published thousands of pages of government documents obtained as a result of those requests on its website and a global document sharing platform[16] to provide the public with a clearer understanding of how various immigration processes work and are affected by government policies, including those impacting refugees and asylees.[17]

35. IRAP routinely analyzes and uses materials obtained through FOIA and other methods to create and publish informational and educational materials about safe pathways for displaced people.[18] These materials are widely disseminated to the public, including refugees, displaced people, advocates, and legal practitioners, free-of-charge through IRAP's legal information website, blogs, and publications posted on its website, and social media platforms.[19]

36. Additionally, expedited processing is warranted because the new RFR policy potentially affects over 500,000 individuals—many of whom live in dangerous circumstances—

---

[16] *See IRAP's U.S. Government Document Collections*, IRAP (last accessed Aug. 25, 2026), https://refugeerights.org/freedom-of-information-act-foia-work-document-collections-lkt.

[17] *See IRAP Shares Its Archive of Thousands of U.S. Government Policy and Training Documents Obtained Through the Freedom of Information Act,* IRAP (last accessed Aug. 25, 2026), https://refugeerights.org/news-resources/irap-shares-its-archive-of-thousands-of-u-s-government-policy-and-training-documents-obtained-through-the-freedom-of-information-act-lkt-foia.

[18] *See, e.g., IRAP Shares U.S. Government Training and Guidance Documents Related to Afghan Refugee, Asylum, SIV, and Parole Processing*, IRAP (last accessed Aug. 25, 2026) https://refugeerights.org/news-resources/irap-shares-u-s-government-policy-training-and-other-documents-related-to-afghan-refugee-asylum-siv-and-parole-processing-lkt-foia; *Practice Advisory: New Central American Minors (CAM) Program Documents Answer Questions About Processing*, IRAP (last accessed Aug. 25, 2026), https://refugeerights.org/news-resources/practice-advisory-new-central-american-minors-cam-documents-answer-questions-about-processing-lkt-foia.

[19] *See e.g.*, International Refugee Assistance Project (@IRAP), X (last accessed Aug. 25, 2026), https://twitter.com/IRAP; International Refugee Assistance Project, Facebook (last accessed Aug. 25, 2026), https://www.facebook.com/RefugeeAssist/.

in limbo without information about the prospects and futures of their refugee resettlement applications.[20]

37. The FOIA Request also sought a fee waiver pursuant to 6 C.F.R. §5.11(k), explaining that disclosure of the information is in the public interest and that disclosure of the information is not in IRAP's commercial interest. Ex. 1.

38. As stated in the FOIA Request, disclosure of the requested information is in the public interest because the lack of publicly available information is causing confusion over the extent and implementation of USCIS's new RFR policy, and the availability of review of refugee resettlement denials. Media reporting on the status of the USRAP demonstrates that refugee resettlement is an ongoing matter of grave concern to the public.

39. Furthermore, a fee waiver is warranted because disclosure is not primarily in IRAP's commercial interest. IRAP is a 501(c)(3) non-profit organization seeking the requested information to serve and educate its clients, members, partners, and the public. IRAP intends to use the information sought to inform its organizational materials and guidance, as IRAP provides free resources to refugees and asylees in the United States and to displaced people across the world.

40. As of the time of filing, USCIS has not responded or formally acknowledged receipt of IRAP's FOIA Request.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of FOIA, 5 U.S.C. §552
### Failure to Respond within the Time Required by Statute

[20] U.S. Dep't of State, *supra* note 5.

1. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

2. Defendant is obligated under 5 U.S.C. §552(a)(6)(A)(i) to respond to Plaintiff's FOIA Request within 20 days of receipt.

3. 5 U.S.C. §552(a)(3)(A) requires Defendant to make the requested records "promptly available," to Plaintiff.

4. On information and belief, Defendant currently has possession, custody, or control of the requested records.

5. Plaintiff has a legal right to obtain such records, and no legal basis exists for Defendants' failure to disclose them.

6. Defendant's failure to make a determination with regard to each FOIA Request within 20 days after receipt violates 5 U.S.C. §552(a)(6)(A)(i) and applicable regulations promulgated thereunder, 6 C.F.R. §5.6(c).

**COUNT II**
**Violation of FOIA, 5, U.S.C. §552**
**Failure to Conduct an Adequate Search for Responsive Records**

7. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

8. Defendant is obligated under 5 U.S.C. §552(a)(3)(C) to conduct a reasonable search for the records responsive to Plaintiff's FOIA Requests.

9. Plaintiff has a legal right to obtain such records, and no legal basis exists for Defendants' failure to search for them.

10. Defendant's failure to conduct a reasonable search for records responsive to Plaintiff's Requests violates 5 U.S.C. §552(a)(3)(C) and the regulations promulgated thereunder, 6 C.F.R. §5.4.

**COUNT III**
**Violation of FOIA, 5 U.S.C. §552**
**Failure to Disclose Responsive Records**

11. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

12. Defendant is obligated under 5 U.S.C. §552(a)(3) to promptly produce records responsive to Plaintiff's FOIA Requests.

13. On information and belief, Defendant currently has possession, custody, or control of the requested records.

14. Plaintiff has a legal right to obtain such records, and no legal basis exists for Defendants' failure to disclose them.

15. Defendant's failure to disclose records responsive to Plaintiff's FOIA Requests violates 5 U.S.C. §552(a)(3).

**COUNT IV**
**Violation of FOIA, 5 U.S.C. §552**
**Failure to Grant Request for Expedited Processing**

16. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

17. Under FOIA, agencies must promulgate regulations providing for expedited processing of requests for records when the requestor "demonstrates a compelling need." 5 U.S.C. §552(a)(6)(E)(i)(I). Compelling need requires that the request is made by a person or organization "primarily engaged in disseminating information," when either (1) there is an

"urgency to inform the public concerning actual or alleged Federal Government activity," (2) "failure to obtain requested records on an expedited basis…could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or (3) "in other cases determined by the agency." *Id.* §§ 552(a)(6)(E)(i)(II), (v)(I)-(II).

18. Plaintiff requested expedited processing pursuant to 5 U.S.C. §552(a)(6)(E), and DHS's implementing regulations 6 C.F.R. §§5.5(e)(1)(i)-(ii) and demonstrated why each of these grounds for expedited processing is independently warranted.

19. Defendant USCIS has not yet acknowledged receipt of Plaintiff's FOIA Request.

20. Defendant USCIS's failure to respond to IRAP's expedited processing violates 5 U.S.C. §552(a)(6)(E) and DHS's own regulations.

**COUNT V**
**Violation of FOIA, 5 U.S.C. §552**
**Failure to Grant Request for Fee Waiver**

21. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if repeated and incorporated herein.

22. Plaintiff requested a fee waiver pursuant to 5 U.S.C. §552(a)(4), and DHS's implementing regulations, 6 C.F.R. §5.11(k), and demonstrated why disclosure of the information sought was in the public interest and was not in Plaintiff's commercial interest.

23. Defendant USCIS has not responded to Plaintiff's request for a fee waiver in violation of its own regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff IRAP respectfully requests that this Court:

1. Assume jurisdiction over this action and maintain jurisdiction until Defendant produces the requested records and comply with every Order of this Court;
2. Declare that Defendant is in violation of FOIA by failing to respond to Plaintiff's FOIA request, unlawfully withholding the requested records, and failing to grant expedited processing and a fee waiver.
3. Order Defendant to complete expedited processing and respond to the FOIA Request including by conducting a reasonable search for the requested records and promptly disclosing them at no cost;
4. Award Plaintiff reasonable attorneys' fees and costs pursuant to 5 U.S.C. §552(a)(4)(E), the Equal Access to Justice Act, and any other applicable provisions of law; and
5. Grant such other and further relief as the Court may deem just and appropriate.

Dated: August 25, 2026

Respectfully submitted,

/s/ Mevlüde Akay Alp
Mevlüde Akay Alp
Ghita Schwarz
International Refugee Assistance Project
One Battery Park Plaza, 33rd Floor
New York, NY 10004
646-988-9876
646-939-9169
makayalp@refugeerights.org
gschwarz@refugeerights.org

Dalia Fuleihan*
International Refugee Assistance Project
P.O. Box 47611
Chicago, IL 60647
646-740-6271
dfuleihan@refugeerights.org

*Motion for admission pro hac vice forthcoming*